IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

SAULETTA L. DERAIMO,

     Plaintiff,

v.                         CASE NO. 2:10-cv-00782

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.


**M E M O R A N D U M   O P I N I O N**

    This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Both parties have consented in writing to a decision by the United States Magistrate Judge and filed briefs in support of judgment on the pleadings.[1]

    Plaintiff, Sauletta Louise Deraimo (hereinafter referred to as "Claimant"), filed an application for SSI on July 23, 2007, alleging disability as of June 2, 2003, due to chronic pain, use of a cane to walk, a pinched sciatic nerve and panic and anxiety attacks.  (Tr. at 106-12, 127.)  The claim was denied initially and upon reconsideration.  (Tr. at 64-68, 73-75.)  On March 29, 2008,

---

[1]  The court reminds the parties that pursuant to Local Rule of Civil Procedure 9.4(a), the parties need not file briefs in support of "judgment on the pleadings."  Instead, Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision."  Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 76.) The hearing was held on August 19, 2008, before the Honorable John W. Rolph. (Tr. at 20-61.) By decision dated September 10, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 9-19.) On April 19, 2010, the Appeals Council considered additional evidence offered by the Claimant, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 1-4.) On June 2, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If

2

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2008).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in

substantial gainful activity since the alleged onset date.  (Tr. at 11.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of sacroiliac ("SI") joint dysfunction, lumbosacral strain, bipolar disorder and panic attacks.  (Tr. at 11.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 12.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 13.) As a result, Claimant cannot return to her past relevant work.  (Tr. at 17.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as small products assembler and non-postal mail clerk, which exist in significant numbers in the national economy.  (Tr. at 18.) On this basis, benefits were denied.  (Tr. at 19.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

4

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).
Additionally, the Commissioner, not the court, is charged with
resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d
1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not
abdicate their traditional functions; they cannot escape their duty
to scrutinize the record as a whole to determine whether the
conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d
396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the
Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was twenty-five years old at the time of the
administrative hearing.  (Tr. at 25.)  Claimant graduated from high
school.  (Tr. at 18.)  In the past, she worked as a door to door
salesperson, as a telemarketer and as a salesperson.  (Tr. at 28-
29.)

The Medical Record

The court has reviewed all evidence of record, including the
medical evidence of record, and will summarize it briefly below.

Evidence before the ALJ

On August 19, 2000, Claimant reported to the emergency room
with complaints of chest pain.  (Tr. at 2.)

On July 15, 2002, Claimant reported to the emergency room with
complaints of panic attacks.  She had been fighting all weekend

with her husband.  (Tr. at 215-16.)

On February 23, 2003, Claimant reported to the emergency room with right lower abdominal pain and learned she was pregnant.  (Tr. at 219, 227.)  On April 29, 2003, Claimant underwent a suction D and C.  (Tr. at 242.)

Claimant was hospitalized at Highland Hospital from June 17, 2003, through June 22, 2003, and treated by Nohl Braun, M.D. Claimant was diagnosed with bipolar disorder, Type II and panic attacks with agoraphobia.  Claimant was not discharged on any medications due to a positive Beta-HCG.  She was discharged on prenatal vitamins.  Claimant planned to leave her husband.  (Tr. at 258.)

On December 21, 2003, Claimant underwent OB ultrasound and was told she was 7.2 weeks pregnant with a right ovarian cyst.  (Tr. at 270.)  A treatment note dated January 22, 2004, indicates that Claimant used cocaine and marijuana early in her pregnancy prior to knowing she was pregnant.  Claimant's history of bipolar disorder was noted. (Tr. at 288.)  Claimant gave birth in June of 2004. (Tr. at 358.)

Claimant was referred for physical therapy on March 30, 2005, with a diagnosis of lumbar strain.  Claimant attended a total of three visits and was discharged from treatment on April 14, 2005. (Tr. at 448.)  Claimant did not report on one occasion.  (Tr. at 449.)

On March 16, 2006, Alfred K. Pfister, M.D. examined Claimant related to pain in her back and buttocks. Claimant reported numbness in her right leg, increased pain with standing and low back pain into her left hip. Claimant received a steroid and lidocain injection, which helped but did not completely alleviate her pain. (Tr. at 333-34.)

An MRI of the lumbar spine on March 26, 2006, was negative, with no significant changes from one done in April of 2005. (Tr. at 332, 345.)

Claimant was referred by Dr. Pfister for physical therapy on March 2, 2006. Claimant attended a total of two visits and was discharged on April 17, 2006. (Tr. at 440.) Claimant rescheduled once and was a no show twice. (Tr. at 441-42.)

The record includes treatment notes from DePaul Health Center. On August 22, 2007, Claimant was catching a connecting flight from Dallas to Charlotte when she felt very tired and put her head between her knees. Passengers thought she had passed out, but Claimant was in fact, very tired because she had not slept much the night before. Claimant reported that her medications were making her sleepy. Claimant's mental status improved and her potassium was repleted. She was discharged to fly home with diagnoses of presyncope, lethargy from polypharmacy, bipolar, sciatica, tobacco use, and hyokalemia. (Tr. at 462-63.)

On September 13, 2007, a State agency medical source completed

a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe.  (Tr. at 497-509.)

X-rays of Claimant's lumbosacral spine on September 27, 2007, were normal.  (Tr. at 517.)

On October 1, 2007, Serafino Maducdoc, M.D. examined Claimant at the request of the State disability determination service. Claimant's primary complaints were bipolar disorder and lower back pain.  (Tr. at 518.)  Range of motion of the hips and ankles was normal.  In the lumbar spine, flexion and extension was 75 degrees. On the straight leg raise test, the right side was 90 degrees, and the left side was 75 degrees.  Deep tendon reflexes were 2+ on both sides.  There were no sensory deficiencies or muscle atrophy. Claimant had a limp on the left side.  She could walk on her toes, but with difficulty.  She was unable to walk on her heels.  Dr. Maducdoc diagnosed chronic lumbosacral strain, bipolar disorder and possible hypertension with sciatica left.  He rated Claimant's diagnosis as fair.  (Tr. at 520.)

On October 5, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and found no limitations.  (Tr. at 523-30.)

On February 26, 2008, a State agency medical source completed a Physical Residual Functional Capacity Assessment and found no exertional limitations, but that Claimant could only occasionally climb ladders, ropes, and scaffolds.  (Tr. at 531-38.)

The record includes an undated West Virginia Department of Health and Human Resources, Physician's Summary, which indicates the physician's last contact with Claimant was on December 1, 2006. Claimant's diagnoses included lumbosacral strain, SI joint dysfunction and bipolar disorder, among others. The source opines that Claimant was disabled for twelve months. (Tr. at 542.) A second Physician's Summary contains similar conclusions. (Tr. at 543.)

On March 6, 2008, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 546-58.)

On May 18, 2008, Sheila Emerson Kelly, M.A. examined Claimant at the request of her counsel. Claimant reported domestic abuse, but is now divorced. (Tr. at 564.) Claimant's psychiatrist recommended therapy, but Claimant refused to go. (Tr. at 564.) When married, Claimant and her husband did quite a few drugs including cocaine and crystal methamphetamine. She stopped when she became pregnant. (Tr. at 565.) Ms. Kelly stated that Claimant did not appear to meet any of the diagnostic criteria for a bipolar disorder, although she was taking psychotropic medications. On the WRAT-4, Claimant was functioning in the average range for word reading and low range for math computation. Based on the Minnesota Multiphasic Personality Inventory-2, a schizotypal personality disorder should be entertained. On the Beck Depression Inventory-

II, scores fell in the mild to moderate range of depression. The Milton Clinical Multiaxial Inventory-III profile showed persistent detachment disorder with patterns of intense, unstable relationships. Claimant has difficulty expressing anger and does not relate to others on a realistic basis. (Tr. at 568-69.) Ms. Kelly found Claimant to be a deeply neurotic woman who is being treated for a bipolar disorder, though in her opinion the diagnosis of bipolar disorder was questionable. Ms. Kelly suspected that Claimant was socially anxious, insecure and very needy of attention, affection and support and somewhat schizotypal in that she does not appear to be able to perform goal-directed activities and she floats from one activity to the next in a rather disconnected fashion. She diagnosed panic disorder with agoraphobia, depressive disorder, not otherwise specified, history of cocaine and methamphetamine abuse and probable dependence, in remission by self-report on Axis I, and personality disorder, not otherwise specified with dependent, paranoid, avoidant, obsessive, and schizotypal characteristics on Axis II. (Tr. at 570.)

On May 18, 2008, Ms. Kelly completed an assessment on which she opined that Claimant was moderately to markedly limited in several areas. (Tr. at 573-75.)

The record includes treatment notes from Dr. Braun at Process Strategies dated February 21, 2007, through May 19, 2008. (Tr. at 578-98.) Dr. Braun treated Claimant for bipolar II disorder and

panic attacks with severe agoraphobia.

The record includes treatment notes from Cabin Creek Health Center dated August 22, 2000, through February 8, 2008.  (Tr. at 658-825.)   On June 1, 2006, Kimberly James, M.D. noted the possibility of early fibromyalgia.  (Tr. at 776.)

Evidence Submitted to Appeals Council

On August 29, 2008, Dr. Pfister examined Claimant and diagnosed fibromyalgia.  Dr. Pfister noted that Claimant complained of increased diffuse pain in frequency and severity and that she had been using a cane for the past year.  Claimant's last reported use of illicit drugs was two months ago.  Claimant also reported worsening migraines.  Claimant had more than sixteen trigger areas. Dr. Pfister recommended a low dose of medication for Claimant's restless legs.  (Tr. at 828.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the Commissioner improperly rejected the new and material evidence submitted to the Appeals Council; (2) the ALJ erred in his credibility analysis; (3) the ALJ failed to consider the combined effect of Claimant's impairments; and (4) part of the record is missing.[2]  (Pl.'s Br. at 17-31; Pl.'s Reply at 1-7.)

---

[2]  Claimant does not mention this argument in his reply, and in fact, it appears the evidence to which she is referring is contained in the record. (Tr. at 509, 558, 587-88.)

11

The Commissioner argues that (1) the Appeals Council did not err in finding that the new evidence did not provide a basis for changing the ALJ's decision; (2) the ALJ considered the appropriate factors when he evaluated Claimant's credibility; (3) the ALJ adequately considered Claimant's impairments in combination; and (4) the record was complete.  (Def.'s Br. at 9-19.)

Turning to Claimant's first argument, at the administrative hearing on August 19, 2008, Claimant testified that she had been told she may have fibromyalgia.  (Tr. at 32.)  In fact, on June 1, 2006, Kimberly James, M.D. diagnosed chronic pain, secondary to SI joint dysfunction, lumbosacral strain and "possible early fibromyalgia."  (Tr. at 776.)

Fibromyalgia is "a nonarticular disorder of unknown cause characterized by achy pain, tenderness, and stiffness of muscles, areas of tendon insertions, and adjacent soft tissues." The Merck Manual 321 (Mark H. Beers, et al. eds., 18th ed. 2006).  For diagnosis, patients tend to have the following features: (1) Pain on palpation of at least 11 of 18 tender points; and (2) A history of widespread pain for at least 3 months.  Id. at 322 Fig. 40-1.

At the hearing, Claimant confirmed that she would have an appointment with a rheumatologist, Dr. Pfister, around the first of September, 2008.  (Tr. at 32.)  Claimant's counsel asked the ALJ to hold the record open for the results of this examination, but the ALJ declined.  Instead, he stated that "if you get those results

12

I'd love to consider them or we can, we can move to reopen at that point. They are significant, but, you know, the possibility of a future diagnosis is, it's kind of vague." (Tr. at 59.) On August 29, 2008, Dr. Pfister examined Claimant and diagnosed fibromyalgia. Dr. Pfister noted that Claimant complained of increased diffuse pain in frequency and severity and that she had been using a cane for the past year. Claimant's last reported use of illicit drugs was two months ago. Claimant also reported worsening migraines. Claimant had more than sixteen trigger areas. Dr. Pfister recommended a low dose of medication for Claimant's restless legs. (Tr. at 828.) Claimant submitted this evidence to the Appeals Council on December 9, 2008. (Tr. at 826.) On April 19, 2010, the Appeals Council found that the evidence did not provide a basis for changing the ALJ's decision. (Tr. at 2.)

In Wilkins v. Secretary, 953 F.2d 93 (4th Cir. 1991), the Appeals Council incorporated into the administrative record a letter submitted with the request for review in which Wilkins' treating physician offered his opinion concerning the onset date of her depression. Id. at 96. The Wilkins court decided it was required to consider the physician's letter in determining whether substantial evidence supported the ALJ's findings. Id. The Fourth Circuit stated:

> "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence." *Huckabee v. Richardson*, 468

13

> F.2d 1380, 1381 (4th Cir. 1972); *see* 42 U.S.C.A. §
> 405(g). The Appeals Council specifically incorporated Dr.
> Liu's letter of June 16, 1988 into the administrative
> record. Thus, we must review the record as a whole,
> including the new evidence, in order to determine whether
> substantial evidence supports the Secretary's findings.

Id. Under Wilkins, the court must review the record as a whole, including the new evidence submitted to the Appeals Council, in order to determine whether the ALJ's decision is supported by substantial evidence.[3]

Upon review of the record as a whole, the court finds that this matter must be remanded for further consideration of the evidence of record in light of the new evidence submitted to the Appeals Council. Within just ten days of the administrative hearing, Claimant was diagnosed with fibromyalgia by a rheumatologist who had examined Claimant on at least one other occasion. With only the possibility of a diagnosis at the time of his decision, the ALJ did not consider whether fibromyalgia was a medically determinable impairment, whether it was severe and whether it caused limitations related to Claimant's residual functional capacity. The ALJ's decision, viewing the record as a whole, including this new evidence, is not supported by substantial

---

[3] Both parties mention "good cause": Claimant correctly points out that there is no such requirement when submitting new evidence to the Appeals Council and argues that regardless, there was good cause; and the Commissioner points out that the treatment note is dated August 27, 2008, but was not submitted until December 9, 2008. (Pl.'s Br. at 17; Def.'s Br. at 9 n.4.) The submission of new evidence to the Appeals Council does not require a showing of good cause, 20 C.F.R. § 416.1470(b) (2008), and Wilkins imposes no requirement on this court to make such a determination.

14

evidence.  In addition, the court finds that a consultative mental examination should be conducted on remand.

The court need not reach the remaining arguments raised by the Claimant.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is not supported by substantial evidence.  Accordingly, by Judgment Order entered this day, this matter is REVERSED and REMANDED for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: August 19, 2011

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge